# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

---------------------------------------------------------

ELAINE WANG,                                          :
                                                      :
            Plaintiff,                                :    Civil Action No. _____
                                                      :
v.                                                    :    **COMPLAINT FOR VIOLATIONS OF**
                                                      :    **SECTIONS 14(a) AND 20(a) OF THE**
RA PHARMACEUTICALS, INC., EDWARD                      :    **SECURITIES EXCHANGE ACT OF**
MATHERS, ROBERT HEFT, TIMOTHY                         :    **1934**
PEARSON, RAJEEV SHAH, AOIFE M.                        :
BRENNAN, BO CUMBO, and DOUGLAS                        :    **JURY TRIAL DEMANDED**
TRECO,                                                :
                                                      :
            Defendants.                               :
---------------------------------------------------------

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is an action brought by Plaintiff against Ra Pharmaceuticals, Inc. ("Ra Pharmaceuticals or the "Company") and the members Ra Pharmaceuticals' board of directors (the "Board" or the "Individual Defendants," and together with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Ra Pharmaceuticals by UCB S.A. ("UCB"), a société anonyme formed under the laws of Belgium.

2.      Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on November 1, 2019 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Proxy Statement

recommends that Company stockholders vote in favor of a proposed transaction whereby Franq Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of UCB, will merge with and into Ra Pharmaceuticals, with Ra Pharmaceuticals surviving the merger and becoming an indirect wholly-owned subsidiary of UCB (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each share of Ra Pharmaceuticals common stock issued and outstanding will be converted into the right to receive $48.00 (the "Merger Consideration").

3.      As discussed below, Defendants have asked Ra Pharmaceuticals stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisor of the Company, Centerview Partners LLC ("Centerview"), in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Ra Pharmaceuticals stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Ra Pharmaceuticals in incorporated in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Ra Pharmaceuticals common stock and has held such stock since prior to the wrongs complained of herein.

10.      Individual Defendant Edward Mathers has served as a member of the Board since 2010 and is currently the Chairman of the Board.

11.      Individual Defendant Robert Heft has served as a member of the Board since March 2016.

12.      Individual Defendant Timothy Pearson has served as a member of the Board since May 2016.

13.      Individual Defendant Rajeev Shah has served as a member of the Board since July 2015.

14.     Individual Defendant Aoife M. Brennan has served as a member of the Board since September 2018.

15.     Individual Defendant Bo Cumbo has served as a member of the Board since November 2018.

16.     Individual Defendant Douglas Treco has been the Chief Executive Officer of the Company since he co-founded the Company in June 2008, and has served as a member of the Board since then.

17.     Defendant Ra Pharmaceuticals is incorporated in Delaware and maintains its principal offices at 87 Cambridge Park Drive, Cambridge, Massachusetts 02140.  The Company's common stock trades on the Nasdaq Stock Exchange under the symbol "RARX."

18.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction**

20.     Ra Pharmaceuticals, a clinical-stage biopharmaceutical company, develops therapeutics for the treatment of diseases caused by excessive or uncontrolled activation of the complement system. The Company's peptide chemistry platform enables the production of synthetic macrocyclic peptides that combine the diversity and specificity of antibodies with the pharmacological properties of small molecules. Its lead product candidate is Zilucoplan, an injection into the tissue under the skin that has completed Phase II clinical trial for the treatment of generalized myasthenia gravis (gMG); has completed Phase II clinical trial for treating paroxysmal nocturnal hemoglobinuria (PNH); and has completed Phase Ib clinical trial to treat

patients with renal impairment. The Company's pre-clinical programs include Factor D inhibition

for treating C3 glomerulonephritis and dense deposit disease; and inhibitors of other complement

factors for renal, autoimmune, and central nervous system diseases. It has a collaboration and

license agreement with Merck & Co., Inc. to identify orally available cyclic peptides for non-

complement program targets, and provide research and development services. Ra Pharmaceuticals

was founded in 2008 and is headquartered in Cambridge, Massachusetts.

21.     On October 10, 2019, UCB and Ra Pharmaceuticals jointly announced the

Proposed Transaction:

> BRUSSELS & CAMBRIDGE, Mass.--(BUSINESS WIRE)--
> regulated information – inside information – UCB and Ra
> Pharmaceuticals Inc. (NASDAQ: RARX, Ra Pharma) announced
> today their entry into a merger agreement pursuant for which UCB
> will acquire Ra Pharma. Under the terms of the agreement, Ra
> Pharma shareholders will receive US$ 48 in cash for each Ra
> Pharma share at closing. The Boards of Directors of both companies
> have unanimously approved the transaction, which remains subject
> to approval by Ra Pharma shareholders and to obtaining antitrust
> clearance and other customary closing conditions.
>
> Ra Pharma is a clinical-stage biopharmaceutical company
> leveraging a proprietary peptide chemistry platform to develop
> novel therapeutics for the treatment of serious diseases caused by
> excessive or uncontrolled activation of the complement system, a
> critical component of the innate immune system. The company was
> founded in 2008 and is headquartered in Cambridge, MA, U.S. The
> company's ExtremeDiversity™ platform enables the production of
> synthetic macrocyclic peptides combining the diversity and
> specificity of antibodies with the pharmacological properties of
> small molecules.
>
> Ra Pharma's phase 3 product candidate, zilucoplan, is a once-daily
> self-administered, subcutaneous peptide inhibitor of C5. In
> December 2018, Ra Pharma announced positive top-line results
> from a phase 2 trial of zilucoplan in patients with generalized
> myasthenia gravis (gMG), achieving clinically meaningful and
> statistically significant reductions in both primary and key
> secondary endpoints. Zilucoplan is currently being tested in phase 3
> for the treatment of gMG with top-line results expected in early

2021. Further indications that are potentially addressable by zilucoplan include immune-mediated necrotizing myopathy (IMNM), amyotrophic lateral sclerosis (ALS) and other tissue-based complement-mediated disorders with high unmet medical need. Ra Pharma is also developing an extended release formulation of zilucoplan, as well as a potential first-in-class oral small molecule C5 inhibitor.

Jean-Christophe Tellier, CEO UCB said: "Ra Pharma is an excellent strategic fit addressing multiple areas of UCB's patient value growth strategy. Upon closing, the acquisition will add to our strong internal growth opportunities – six potential product launches in the next five years, strengthening our neurology and immunology franchises with late and early-state pipeline projects. In addition, the combination will provide us with the opportunity to become a leader in treating people living with myasthenia gravis, an auto-antibody mediated neurological orphan disease with high unmet medical need, as well as adding a highly productive technology platform to our innovation engine."

**Strategic Rationale**

The proposed acquisition is part of UCB's strategic growth path, namely the "Accelerate and Expand" phase since January 2019. The addition of Ra Pharma's 'pipeline in a product' investigational peptide C5 inhibitor zilucoplan alongside UCB's anti-FcRn rozanolixizumab, could create an opportunity to provide more people living with myasthenia gravis with better treatment options. Beyond myasthenia gravis, this acquisition has the potential to enable UCB to offer new treatment opportunities for several rare diseases in neurology and immunology as well as different delivery forms, including extended release and orally available product. The combined portfolio may also offer synergies in the outreach to people with rare diseases and the health care market.

Additionally, UCB would gain access to a proprietary technology platform to produce synthetic macrocyclic peptides. The platform, known as ExtremeDiversity™, is based on messenger ribonucleic acid (mRNA) display and combines the diversity, specificity and high affinity of therapeutic antibodies with the attractive pharmacological properties of small molecules. It has the potential to augment UCB's drug discovery capabilities and provide access to Ra Pharma's proven expertise and talent in this area. UCB will also further strengthen its presence in the U.S., in particular the innovation hub in the Boston, Massachusetts area (U.S.).

Doug Treco, Ph.D., President and Chief Executive Officer of Ra Pharmaceuticals commented: "UCB shares our commitment to the rare disease patient community and our goal of developing novel, accessible, and cost-effective therapies in the areas of immunology and neurology. I firmly believe it is the right partner for us to advance new treatment options from our unique early and late stage pipeline to patients. Ra Pharma's technology platform is an ideal addition to UCB's leading innovation capabilities, and our scientists are looking forward to working with the entire team at UCB."

**Transaction Terms, Approvals and Timing to Close**

Upon closing, Ra Pharma shareholders will receive US$48.00 for each Ra Pharma share (approximately US$2.5bn/€2.2bn), which represents a transaction value of approximately US$ 2.1 billion / €2.0 billion, net of Ra Pharma cash. The cash consideration represents an approximately 93% premium to Ra Pharma shareholders based on the 30-day volume weighted average closing stock price of Ra Pharma prior to signing. The transaction has been unanimously approved by the Boards of Directors of both, UCB and Ra Pharma and remains subject to approval by Ra Pharma shareholders, obtaining anti-trust clearance and other customary closing conditions. UCB and Ra Pharma expect to complete the transaction by the end of Q1 2020.

**Funding**

The acquisition of Ra Pharma will be financed by a combination of existing cash resources and new bank term loans, arranged and underwritten by BNP Paribas Fortis and Bank of America Merrill Lynch. Pro-forma for this acquisition, UCB's new net debt / rEBITDA ratio would be in the range between 1.5 and 2.0 times with rapid de-leveraging expected allowing UCB to maintain significant balance sheet flexibility.

**Financial Guidance**

This acquisition will not impact UCB's 2019 financial guidance. The acquisition would be dilutive to UCB's mid-term earnings level due to R&D investments. As a result, the mid-term target of UCB reaching a rEBITDA ratio (to revenue) of 31% would move to 2022 from 2021 as previously guided. The acquisition is expected to be core EPS accretive from 2024 onwards and would enable accelerated top and bottom line growth for UCB from 2024 onwards.

**Advisors**

Bank of America Merrill Lynch and Lazard are acting as financial advisors to UCB in relation to the transaction. Covington & Burling LLP is acting as legal advisor to UCB on this transaction.

Centerview Partners is acting as exclusive financial advisor to Ra Pharma on this transaction. Latham & Watkins LLP is acting as legal advisor to Ra Pharma on this transaction.

22.     It is imperative that Ra Pharmaceuticals' stockholders are provided with the material information that has been omitted from the Proxy Statement so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

23.     On November 1, 2019, Ra Pharmaceuticals filed the Proxy Statement with the SEC in connection with the Proposed Transaction.   The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Ra Pharmaceuticals' Financial Projections*

24.     The Proxy Statement fails to provide material information concerning financial projections prepared by Ra Pharmaceuticals management and relied upon by Centerview in its analysis. The Proxy Statement indicates that in connection with the rendering of its fairness

opinion, the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Centerview with forming a view about the stand-alone valuation of the Company. Proxy Statement at 56-58. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Ra Pharmaceuticals management provided to the Board and Centerview. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics EBIT and Unlevered Free Cash Flow, but fails to provide a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Proxy Statement at 58.

26.     When a company discloses non-GAAP financial measures in a proxy statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

27.     The SEC has noted that:

companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

28.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

29.     With respect to the *Selected Public Company Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the selection of the 2023 EV/REV Multiples ranging from 3.0x to 7.0x; and (ii) the net cash of the Company as of December 31, 2019. Proxy Statement at 52.

30.     With respect to the *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the selection of the reference range of Transaction Values of $1.000 billion to $1.750 billion; and (ii) the net cash of the Company as of December 31, 2019. Proxy Statement at 53.

31.     With respect to the *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the projected terminal values for the Company; (ii) the inputs and assumptions underlying the range of discount rates ranging from 11.0% to 13.0%; (iii) the estimated costs

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

associated with an assumed $500 million capital raise in 2021; (iv) the Company's estimated net

cash balance as of December 31, 2019; and (v) the number of fully-diluted shares of Company

common stock outstanding as of October 8, 2019. Proxy Statement at 53-54.

32.     In sum, the omission of the above-referenced information renders statements in the

Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

Absent disclosure of the foregoing material information prior to the special stockholder meeting

to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision

regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with

irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

33.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

34.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange

Act, provides that proxy communications with stockholders shall not contain "any statement

which, at the time and in the light of the circumstances under which it is made, is false or

misleading with respect to any material fact, or which omits to state any material fact necessary in

order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

35.     Defendants have issued the Proxy Statement with the intention of soliciting

stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and

authorized the dissemination of the Proxy Statement and the use of their name in the Proxy

Statement, which fails to provide critical information regarding, among other things, financial

analyses that were prepared by Centerview and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

36.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

37.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

38.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

39.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40.     The Individual Defendants acted as controlling persons of Ra Pharmaceuticals within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Ra Pharmaceuticals, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Ra Pharmaceuticals, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

41.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

42.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Ra Pharmaceuticals, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

43.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

44.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

45.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

46.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: November 1, 2019

**OF COUNSEL:**

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

**RIGRODSKY & LONG, P.A.**

By:  */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*